IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01184-WYD-CBS

ROLANDO MORENO;
NORMA LUNA;
TOMAS COMPARAN; and
FRANCISCO ZAMORA,

      Plaintiffs,

v.

COLORADO BASEMENT COMPANY, LLC., a Colorado Limited Liability Company;
LIGHTNING CONSTRUCTION COMPANY, a Colorado general partnership;
LOMA CONSTRUCTION COMPANY, a Colorado sole proprietorship;
MICHAEL B. GILBERTSON, an individual;
JOE LOMA, an individual;
PETE LOMA, an individual; and
PETE J. LOMA, an individual,

      Defendants.

_____

## ORDER FOR ENTRY OF DEFAULT JUDGMENT
_____

THIS MATTER is before the Court on Plaintiffs Rolando Moreno's, Norma

Luna's, Tomas Comparan's, and Francisco Zamora's Motion for Entry of Default

Judgment, filed October 25, 2006 (docket #35) pursuant to Fed. R. Civ. P. 55(b)(2)

AND Plaintiffs' Motion for Attorney Fees and Costs Pursuant to 29 U.S.C. § 216 and

Colo. Rev. Stat. § 8-4-110(1) (docket #42).  A hearing on the Motion was held on

November 15, 2006.  The Court has reviewed the motion and its supporting affidavits,

exhibits and all other evidence, and with good cause appearing therefor, finds and

orders as follows:

I.      ENTRY OF DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 55(b)(2)

A.      <u>Background</u>

1.      On June 20, 2006, the Plaintiffs filed this case against the Defendants,
seeking unpaid wages, overtime, liquidated damages, statutory penalties, punitive
damages, reasonable attorney fees and costs, pre- and post-judgment interest, and
further relief as the Court deems just.

2.      Plaintiffs filed a Complaint that states ten claims for relief: (1) declaratory
judgment that Defendants Joe and Pete Loma are employees or agents of CBC; (2)
alternatively, declaratory judgment that Defendants are joint employers of Plaintiffs; (3)
unpaid wages and overtime under the Fair Labor Standards Act; (4) violation of the
Colorado Wage Claim Act C.R.S. § 8-4-109 and violation of the Colorado Minimum
Wage Act C.R.S. § 8-6-104; (5) breach of express contract; (6) breach of implied
contract; (7) promissory estoppel; (8) unjust enrichment; (9) fraud and fraudulent
concealment; and (10) negligent misrepresentation.

3.      More than twenty (20) days have elapsed since the date of service of
Summons and Complaint on each Defendant.

4.      On September 21, 2006, Entry of Default, pursuant to Fed. R. Civ. P.
55(a), was entered by the Clerk of the Court.

5.      Attached to the Motion for Entry of Default Judgment as Exhibit 1 is the
Affidavit of Rolando Moreno ("Moreno") in Support of Default Judgment attesting to the
truth of the facts stated in support of the entry of default judgment for Moreno against
Defendants Colorado Basement Company, LLC, Lightning Construction Company,

-2-

Loma Construction Company, Michael B. Gilbertson, Joe Loma, Pete Loma, and Pete J. Loma.

6.      Attached to the Motion for Entry of Default Judgment as Exhibit 2 is the Affidavit of Tomas Comparan ("Comparan") in Support of Default Judgment attesting to the truth of the facts stated in support of the entry of default judgment for Comparan against Defendants Colorado Basement Company, LLC, Lightning Construction Company, Loma Construction Company, Michael B. Gilbertson, Joe Loma, Pete Loma, and Pete J. Loma.

7.      Attached to the Motion for Entry of Default Judgment as Exhibit 3 is the Affidavit of Francisco Zamora ("Zamora") in Support of Default Judgment attesting to the truth of the facts stated in support of the entry of default judgment for Zamora against Defendants Colorado Basement Company, LLC, Lightning Construction Company, Loma Construction Company, Michael B. Gilbertson, Joe Loma, Pete Loma, and Pete J. Loma.

8.      Attached to the Motion for Entry of Default Judgment as Exhibit 4 is the Affidavit of Norma Luna ("Luna") in Support of Default Judgment attesting to the truth of the facts stated in support of the entry of default judgment for Luna against Defendants Colorado Basement Company, LLC, Lightning Construction Company, Loma Construction Company, Michael B. Gilbertson, Joe Loma, Pete Loma, and Pete J. Loma.

9.      Attached to the Motion for Entry of Default Judgment as Exhibit 5 is the Affidavit of Vic Kladesky in Support of Default Judgment attesting to the truth of the

facts stated in support of the entry of default judgment against Defendants Colorado Basement Company, LLC, and Michael B. Gilbertson.

10.     Plaintiffs are individuals who reside in the State of Colorado and were residents of Colorado during all times material to their claims.

11.     The Defendants are not infants.

12.     The Defendants are not incompetent persons.

13.     The Defendants are not members of the United States Military.

14.     The United States District Court for the District of Colorado has original jurisdiction under 28 U.S.C § 1331 and 29 U.S.C. § 216(b) because the Plaintiffs seek relief against the Defendants, jointly and severally, based on their rights under the Fair Labor Standards Act ("FLSA").

15.     The United States District Court for the District of Colorado has supplemental jurisdiction over the state law, and other related common law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b) and C.R.S. § 13-1-124 (2005).  Defendants' acts and omissions establish minimum contacts with Colorado under C.R.S. § 13-1-124, through Defendants' commission of tortuous acts within Colorado and through their violations of their obligations under Colorado law, C.R.S. § 8-4-109, to pay Colorado residents wages and compensation earned as the result of services performed in Colorado.

17.     On August 31, 2005, Defendant CBC registered as a Colorado limited liability corporation after the acts and omission on which Plaintiffs base their claims.

18.     Prior to August 31, 2005, CBC was the sole proprietorship of Gilbertson.

19.     CBC, LLC, is the successor in interest to Gilbertson as the sole proprietor of CBC.

20.     Gilbertson is the registered agent for CBC.  Gilbertson and John N. Kelly list themselves as CBC's founders in CBC's Articles of Organization, and, to the best of Plaintiffs' information and belief, Gilbertson is a Managing Member of CBC.

21.     "CBC" refers collectively to Gilbertson and CBC.

22.     Lightning Construction is not a corporation registered with the Colorado Secretary of State.

23.     Lightning Construction has a registered trade name with the Colorado Department of Revenue.  Joe Loma and Pete Loma are listed as general partners on this registration.

24.     Loma Construction is not a corporation registered with the Colorado Secretary of State.

25.     Loma Construction had a registered trade name with the Colorado Department of Revenue.  Pete J. Loma was listed as the sole proprietor on this registration.

26.     On November 30, 2005, the registered trade name for Loma Construction was closed.

27.     Lightning Construction and Loma Construction have the same business address, 665 Newton St. in the City and County of Denver, listed on their registered trade name filings with the Colorado Department of Revenue.

28.    CBC contracted with homeowners of the following properties to perform general remodeling and renovation work:  2028 Glencoe Street, Denver; 906 Newton Street, Denver; 1244 Fairfax Street, Denver; 14552 Stargazer Drive, Broomfield; 11929 Lavinia Lane, Northglenn; and 14216 Piney River Road, Broomfield.  Collectively, the work done under CBC's contracts with the homeowners of these six properties is referred to as the "CBC Projects."

29.    During the period in dispute, Plaintiffs Moreno, Comparan and Zamora worked exclusively on the CBC Projects.

30.    Plaintiff Luna worked as an administrative assistant, timekeeper, secretary and driver for Joe Loma on CBC Projects.

31.    In or around May and June 2005, Plaintiffs were each individually hired by Joe Loma to perform demolition, construction or support work on the six CBC Projects.

32.    When he hired Plaintiffs, Joe Loma made no specific representation as to who the employer would be for their work on CBC Projects.

33.    Plaintiffs never received any paychecks or other documentation to indicate the name of their employer.

34.    During the time Plaintiffs were working on the CBC Projects, CBC maintained three trucks, each with the CBC logo painted on the doors.  Gilbertson used one of the CBC trucks and the other two CBC trucks were used by Joe Loma and Pete Loma, respectively.

35.    Plaintiffs Luna, Comparan and Zamora rode in and drove one or the other of these trucks during their work on the CBC Projects.

36.     On or around July 12, 2005, Plaintiff Zamora drove Joe Loma's truck from the paint shop, where the CBC decal had just been painted on, to Gilbertson's home where all three trucks, including Pete Loma's, were assembled and photographed for CBC's website.  At this time, Gilbertson told Plaintiff Zamora if he continued to work with CBC that Zamora could be a boss and have a truck like Joe and Pete.

37.     Plaintiffs Zamora and Comparan used tools owned by CBC to carry out their work on the CBC Projects.

38.     Defendant Joe Loma told Plaintiff Norma Luna that Michael Gilbertson was his boss.

39.     On or about June 24, 2005, Michael Gilbertson said he was going to get "rid" of Joe Loma.  Norma Luna understood this statement to mean that Gilbertson was going to fire Joe Loma.

B.     <u>Wage Claim - Plaintiff Rolando Moreno</u>

40.     Throughout May, June, and July of 2005, an announcement was broadcast on KBNA, a local Spanish-language radio station, requesting skilled construction workers and administrative help.  This request was aired repeatedly and interested parties were instructed to call Joe Loma's telephone number.

41.     On or about the first week of June, 2005, Rolando Moreno responded to an announcement requesting skilled construction workers placed on Spanish-language radio station KBNA by calling the phone number given in the announcement and spoke to Joe Loma as a result.

42.     Joe Loma extended an employment offer to Moreno for $11.00/ hour to

perform skilled construction labor on the CBC Projects.

43.     Joe Loma told Moreno he would be paid bi-monthly by the end of the
business day on the first and third Friday of each month.

44.     Moreno accepted Joe Loma's offer on or about the first week of June,
2005.

45.     Moreno performed work on the CBC Projects under the supervision of Joe
Loma, Pete Loma, and Michael Gilbertson from early June, 2005, through the middle of
July, 2005.

46.     Early in his term of employment, Moreno was paid approximately $140.00
in cash by Joe Loma after he complained to Joe Loma that he could not buy food, pay
for gas, or provide for his family.

47.     Sudook Kim, the owner of 14216 Piney River Rd., paid Moreno $110.00
from funds Kim owed to CBC for 10 hours of work Moreno completed on the Kim house.


48.     Moreno has not been compensated for the remainder of his labor or
services performed on the CBC Projects during June or July of 2005.

49.     On or about July 3, 2005, Pete Loma contacted Moreno and requested
that he go to the worksite at 2028 Glencoe Street to restore the water supply that had
been disconnected.  Moreno agreed.

50.     Moreno went to Home Depot to purchase approximately $50.00 worth of
material to restore the water at 2028 Glencoe Street.

51.     Moreno used his own funds to make this purchase, reasonably

-8-

anticipating that CBC or the other Defendants would repay him for his expenses.

52.    Moreno has not been compensated for these expenses.

53.    On or around the first week of June, 2005, at the close of his first week of employment, Moreno asked when he would be paid.  Joe Loma responded that he would be paid after two weeks.

54.    On or around the third week of June, 2005, after two weeks of employment, Moreno again inquired about his paycheck.  Joe Loma responded that Moreno would have to wait another week.

55.    On or around July 1, 2005, Alexis Owens, owner of 2028 Glencoe, told Moreno that she had made complete payment to CBC in advance for all the work at her home on which Moreno had worked.

56.    On at least one occasion during Moreno's employment, Moreno saw Pete Loma make large transactions with Home Depot in cash.

57.    On or around the first week of July, 2005, after three weeks of work, Moreno inquired one final time about his pay.  Joe Loma continued to disregard his requests.

58.    The last day Moreno performed services for Defendants was on or about July 4, 2005.

59.    On or about July 11, 2005, Moreno waited at 2028 Glencoe Street for Joe Loma to arrive in order to demand payment.  Moreno explained to the homeowner that he was unable to work that day because he had not been paid.  The homeowner, Alexis Owens, stated that she had paid CBC in full.

60.    Gilbertson, Joe Loma and Pete Loma did not show up to 2028 Glencoe on July 11, 2005.

61.    On or about July 11, 2005 Moreno was constructively discharged by CBC and the other Defendants.

62.    Moreno worked on the CBC Projects for a total of 138 hours at a regular wage rate of $11 per hour.  Of the total 138 hours, Moreno worked 116 regular hours at $11 per hour and 22 overtime hours at 16.50 per hour amounting to $1639.00 in wages.  $1639.00 in wages minus the $140.00 payment from Joe Loma and $110.00 payment from Sudook Kim equals $1389.00 in unpaid wages.

63.    CBC and the other Defendants were required to pay Moreno all of his earned wages and compensation that remained unpaid immediately after July 11, 2005, and, in any event, no later than on the next regular payday after July 11, 2005, pursuant to C.R.S. § 8-4-109 (2005).

64.    On behalf of Moreno, a letter demanding payment of wages, pursuant to C.R.S. § 8-4-109 (2005), was sent to Joe Loma, Pete Loma, Pete J. Loma, Loma Construction, and Lightning Construction within the requisite sixty day time frame.

65.    These written demands, provided to all Defendants directly, except CBC, gave notice to CBC because these Defendants acted as CBC's agents.

66.    CBC and the other Defendants failed to respond to Moreno's wage demand letters within ten days and have failed to pay Moreno all of his earned wages and compensation.

C.    <u>Wage Claim - Plaintiff Tomas Comparan</u>

67.     On or about May 31, 2005, Tomas Comparan was introduced to Joe Loma by one of his friends.

68.     Joe Loma extended an employment offer to Comparan for $11.00/ hour to perform skilled construction labor on the CBC Projects.

69.     Joe Loma told Comparan he would be paid every fifteen days.

70.     Comparan accepted Joe Loma's offer on or about May 31, 2005.

71.     Comparan performed work for CBC and the other Defendants from early June, 2005, through the middle of July, 2005, on the CBC Projects.

72.     Comparan observed three different CBC trucks during his employment. The three trucks were normally driven by Michael Gilbertson, Joe Loma, and Pete Loma.

73.     Throughout Comparan's employment, he rode in or drove one of the three CBC trucks.

74.     While working on the CBC Projects, Comparan used tools owned by CBC to carry out his work for the Defendants.

75.     After he made several requests expressing extreme hardship because he had not been paid his outstanding wages, Comparan received $100.00 in cash on one occasion and $40.00 in cash on another to fill his gas tank.

76.     Comparan has not been compensated for the remainder of his labor or services performed for CBC and the other Defendants during June and July of 2005.

77.     On or about July 12, 2005, after not being paid for many days of work, Comparan was constructively discharged by CBC and the other Defendants.

-11-

78.     Comparan worked on the CBC Projects for a total of 129.50 hours over 15 work days at a regular wage rate of $11 per hour.  Of the 129.50 total hours, Comparan worked 114 regular hours at $11 per hour and 15.50 overtime hours at $16.50 per hour amounting to $1509.75 in wages.  $1509.75 minus the $140.00 payment from Joe Loma equals $1369.75 in unpaid wages.

79.     CBC and the other Defendants were required to pay Comparan all of his earned wages and compensation that remained unpaid immediately after July 12, 2005, and, in any event, no later than on the next regular payday after July 12, 2005, pursuant to C.R.S. § 8-4-109 (2005).

80.     On behalf of Comparan, a letter demanding payment of wages, pursuant to C.R.S. § 8-4-109 (2005), was sent to Joe Loma, Pete Loma, Pete J. Loma, Loma Construction, and Lightning Construction within the requisite sixty day time frame.

81.     These written demands, provided to all Defendants directly, except CBC, gave notice to CBC because these Defendants acted as CBC's agents.

82.     CBC and the other Defendants failed to respond to Comparan's wage demand letters within ten days and failed to pay Comparan all of his earned wages and compensation.

D.      <u>Wage Claim - Plaintiff Francisco Zamora</u>

83.     Plaintiff Zamora was recruited by Plaintiff Comparan to work on the CBC Projects.

84.     Joe Loma extended an employment offer to Zamora for $11.00/ hour to perform skilled construction labor on CBC's Projects.

85.     Joe Loma told Zamora he would be paid bi-monthly by the end of the business day on the first and third Friday of each month.

86.     Zamora accepted Joe Loma's offer on or about June 29, 2005.

87.     Zamora performed work for CBC and the other Defendants from June 30, 2005, through July 12, 2005.

88.     Zamora observed three different CBC trucks during his employment. The three trucks were normally driven by Michael Gilbertson, Joe Loma, and Pete Loma.

89.     Throughout Zamora's employment, he frequently rode in one or the other of the three CBC trucks.

90.     While working on the CBC Projects, Zamora used tools owned by CBC to carry out his work for the Defendants.

91.     On or around July 12, 2005, Zamora drove Joe Loma's truck from a paint shop, where the CBC decal had just been painted on, to Michael Gilbertson's home where all three trucks, including Joe Loma's, were assembled and photographed for CBC's website.

92.     While Zamora was at Michael Gilbertson's home, Gilbertson told him that if he continued to work with CBC that he could be a boss and have a truck like Joe Loma and Pete Loma.

93.     After several requests expressing extreme hardship because he had not been paid his outstanding wages, Zamora received $100.00 in cash on July 7, 2005, representing a small fraction of his total outstanding wages for his work on the CBC Projects.

94.     In July 2005, Joe Loma promised Zamora payment on several occasions. At Zamora's final request, Joe Loma paid Zamora $40.00 in cash toward the end of his employment, and Joe Loma told Zamora that Loma intended to pawn several of his tools to acquire money for wage payments.

95.     Zamora spoke with Alexis Owens, homeowner of 2028 Glencoe Street, who told him she had paid CBC in full for the work done on her home.

96.     Zamora has not been compensated for the remainder of his labor or services performed on the CBC Projects during June or July of 2005.

97.     On July 12, 2005, Zamora worked his final day on the CBC Projects.

98.     On July 14, 2005, and for several days thereafter, Zamora attempted to contact Joe Loma about his outstanding wages.  Joe Loma never answered the phone or Zamora's messages.

99.     Zamora was constructively discharged by CBC and the other Defendants.

100.    Zamora worked on the CBC Projects for a total of 89.50 hours over 10 work days at a regular wage rate of $11 per hour.  Of the 89.50 total hours, Zamora worked 81 hours under 40 hours per week at $11 per hour and 8.50 overtime hours at $16.50 per hour amounting to $1031.25 in wages.  $1031.25 minus the $140.00 payment from Joe Loma equals $891.25 in unpaid wages.

101.    CBC and the other Defendants were required to pay Zamora all of his earned wages and compensation that remained unpaid immediately after July 12, 2005, and, in any event, no later than on the next regular payday after July 12, 2005, pursuant to C.R.S. § 8-4-109 (2005).

-14-

102.    On behalf of Zamora, a letter demanding payment of wages, pursuant to

C.R.S. § 8-4-109 (2005), was sent to Joe Loma, Pete Loma, Pete J. Loma, Loma

Construction, and Lightning Construction within the requisite sixty day time frame.

103.    These written demands, provided to all Defendants directly, except CBC,

gave notice to CBC because these Defendants acted as CBC's agents.

104.    CBC and the other Defendants failed to respond to Zamora's wage

demand letters within ten days and have failed to pay Zamora all of his earned wages

and compensation.

     E.    <u>Wage Claim - Plaintiff Norma Luna</u>

105.    On or about June 20, 2005, Plaintiff Norma Luna responded to an

announcement requesting an administrative assistant placed on Spanish-language

radio station KBNA by calling the phone number given in the announcement and spoke

to Joe Loma as a result.

106.    Joe Loma extended an employment offer to Norma Luna for $8.00 per

hour to be an administrative assistant, timekeeper, secretary and driver for Joe Loma

on CBC's Projects.

107.    Joe Loma told Norma Luna she would be paid bi-monthly by the end of

the business day on the first and third Friday of each month.  Norma Luna told Joe

Loma she needed to be paid weekly so she could take care of family obligations.  Joe

Loma agreed to pay Norma Luna weekly.

108.    Norma Luna accepted Joe Loma's offer on or about June 20, 2005.

109.    Norma Luna performed work for CBC and the other Defendants from June

21, 2005, through July 5, 2005, under the supervision of Joe Loma.

110.   Joe Loma told Norma Luna that Michael Gilbertson was his boss.

111.   On several occasions, Norma Luna was instructed to drop off and pick up papers between Michael Gilbertson and Joe Loma.

112.   On or about June 24, 2005, Michael Gilbertson said he was going to get "rid" of Joe Loma.  Norma Luna understood this statement to mean that Gilbertson was going to fire Joe Loma.

113.   During Luna's first week of employment she worked under the supervision of Joe Loma.

114.   During Luna's second week of employment she worked under the supervision of Pete Loma.

115.   Luna was responsible for keeping time, driving Joe Loma, and at times picking up and delivering supplies.

116.   Luna recorded the hours of Plaintiffs Tomas Comparan, Rolando Moreno and Francisco Zamora.

117.   During the first week of Luna's employment, she recorded the Plaintiffs' hours pursuant to the direction of Joe Loma, who would tell her when each employee started and ended work.

118.   During the second week of Luna's employment, she traveled to worksites and asked the employees what time they began work. Those employees working at a different site would call Luna to report their hours or Pete Loma would tell Luna what time they began work.

119.    Luna did not record the time it took employees to travel to and from the work site.

120.    Employees that worked on weekends were instructed to call Luna to have their hours recorded.  If an employee did not call Luna, the hours would go unrecorded.

121.    On one occasion during Luna's employment, she overheard Plaintiff Rolando Moreno ask Joe Loma to provide proper paychecks and make sure that taxes are taken out.  Joe Loma told Luna to disregard this request as it was not a priority.

122.    Joe Loma paid Norma Luna her first week's wages, $240.00 in cash, telling Luna that he could afford to pay her because he had just "won big" at the casino.

123.    Norma Luna was not compensated for the remainder of her labor or services performed for CBC and the other Defendants during June or July of 2005.

124.    Norma Luna made several purchases of remodeling supplies in good faith on behalf of CBC and the other Defendants totaling $129.00.

125.    Gilbertson directed Luna to go to BMC Millwork to purchase door locks for the work at 14552 Stargazer.  Gilbertson told Luna that he would reimburse her for these payments.  The Defendants failed to reimburse her for the $129.00 of materials she purchased on their behalf.

126.    CBC and the other Defendants failed to pay Norma Luna all of her earned wages and compensation.

127.    On July 5, 2005, after not being paid for ten days, Norma Luna stopped working for CBC and the other Defendants because she was unable to provide food and shelter for her three children.

128.    Luna worked on the CBC Projects for a total of 77 hours over 10 work days at a regular wage rate of $8.00 per hour amounting to $616.00 in wages.  $616.00 minus the $240.00 payment from Joe Loma equals $376.00 in unpaid wages.

129.    CBC and the other Defendants were required to pay Norma Luna all her earned wages and compensation that remained unpaid no later than on CBC's and the other Defendants' next regular payday after July 5, 2005.  C.R.S. § 8-4-109 (2005).

130.    On behalf of Luna, a letter demanding payment of wages, pursuant to C.R.S. § 8-4-109 (2005), was sent to Joe Loma, Pete Loma, Pete J. Loma, Loma Construction, and Lightning Construction within the requisite sixty day time frame.

131.    These written demands, provided to all Defendants directly, except CBC, gave notice to CBC because these Defendants acted as CBC's agents.

132.    CBC and the other Defendants failed to respond to Luna's wage demand letters within ten days and have failed to pay Luna all of her earned wages and compensation.

F.    Attorneys' Fees

133.    A Motion for Attorney Fees and Costs and the Proposed Order for the Award of Attorney Fees and Costs were filed with the Court on November 27, 2006 (docket #42).  As Plaintiffs' are the prevailing party in this case under both the FLSA and the CWCA, the court finds it is appropriate to award Plaintiffs reasonable attorney fees and costs pursuant to 29 U.S.C. § 216 and C.R.S. § 8-4-110(1), respectively.

134.    Attached to the Motion for Award of Attorney Fees and Costs as **Exhibits 1** and **2**, respectively, are the Affidavit of Christine Cimini and the Affidavit of John R.

Paddock, Jr. in Support of the Motion for Attorney Fees and Costs.  These Affidavits attest to the time each of these attorneys spent on various issues and tasks and the resulting attorney fees.  Christine Cimini's Affidavit also attests to the time spent by the student lawyers she supervised.  These Affidavits also attest to the costs incurred for Plaintiffs.  The fees and costs attested to represent the total attorney time and expenses actually incurred in representing Plaintiffs from the inception of this case through the date of the Motion, and the portion of fees and costs Plaintiffs' counsel reasonably believe they incurred representing Plaintiffs.

135.    The Affidavits confirm the hourly rates customarily charged by Plaintiffs' counsel and the rates actually charged for this case.  The Affidavits also consider the time Plaintiffs' counsel believe they reasonably spent conferring with the four Plaintiffs to assess their claims, using an investigator, doing their own review of the background facts, writing the Complaint, preparing all supporting exhibits, finding and serving Defendants, communicating with various of the Defendants about Plaintiffs' claims, seeking and obtaining default and default judgment and, finally, to prepare and file the Motion a supporting brief and a Proposed Order.

136.    As stated in the Affidavits, Plaintiffs' senior, supervising attorneys, Christine Cimini and John Paddock, have considered the added time they and the law students, Todd Wells, Theodore Gleason, Matthew Slaby, Donald Bounds, and Kelly Zuckowsky, spent in the teaching portion of bringing this case.  Christine Cimini and John Paddock have considered the duplication of time resulting from the fact that several students have represented Plaintiffs.

137.   As such, Plaintiffs do not seek the fees incurred as part of the instructional side of this action, and Plaintiffs' counsel have done their best to trim out all existing duplicative time.  Attached to the Motion as exhibits **3, 4, 5, 6**, and **7**, respectively, are the Affidavits of the student attorneys.  The Affidavits and their exhibits confirm the time the student attorneys spent on various issues and tasks and the resulting hourly charges.

138.   The Court finds the hourly rate charged by Plaintiffs' counsel John Paddock ($275 per hour) and Christine Cimini ($200 per hour) are reasonable as measured against the prevailing market rate.  Additionally, the Court finds the calculation of attorney fees for John Paddock and Christine Cimini are reasonable per the loadstar.

139.   The Court finds the hourly rate charged by Plaintiffs' student lawyers, Donald Bounds, Matthew Slaby, Theodore Gleason, Todd Wells, and Kelly Zuckowsky ($100 per hour) is reasonable measured against the prevailing market rate for paralegals and law clerks.  Additionally, the Court finds the calculation of attorney fees for the student attorneys, reasonable as each affidavit accounts for inefficiencies and duplication of time.

140.   The Court, having reviewed the Affidavit of John Paddock, finds the calculation of attorney fees, paralegal fees and costs by John Paddock to be reasonable, and awards Plaintiffs' the following: $3,739.45.

141.   The Court, having reviewed the Affidavit of Christine Cimini, finds the calculation of attorney fees and costs by Christine Cimini to be reasonable, and awards

Plaintiffs' the following: $ 6,277.50.

142.    The Court, having reviewed the Affidavit of student attorney Donald Bounds, finds the calculation of attorney fees by Donald Bounds to be reasonable and awards Plaintiffs' the following: $9,012.50.

143.    The Court, having reviewed the Affidavit of Matthew Slaby, finds the calculation of attorney fees by Matthew Slaby to be reasonable and awards Plaintiffs the following: $4,418.00.

144.    The Court having reviewed the Affidavit of Theodore Gleason, finds the calculation of attorney fees by Theodore Gleason to be reasonable, and awards Plaintiffs the following: $4,593.00.

145.    The Court having reviewed the Affidavit of Todd Wells, finds the calculation of attorney fees by Todd Wells to be reasonable, and awards Plaintiffs the following sum: $5,625.00.

146.    The Court having reviewed the Affidavit of Kelly Zuckowsky, finds the calculation of attorney fees by Kelly Zuckowsky to be reasonable, and awards Plaintiffs the following: $ 5,265.00.

II.    FINDINGS TO SUPPORT DEFAULT JUDGMENT

Based on the foregoing findings, the Court concludes as follows:

A.    Joe Loma, Pete Loma and Michael Gilbertson are all employers of the Plaintiffs as defined by the Fair Labor Standards Act, 29 U.S.C. §203(d).

B.    Joe Loma, Pete Loma and Michael Gilbertson are all employers of the Plaintiffs as defined by the Colorado Wage Claim Act, C.R.S. § 8-4-101(5).

C.      Defendants' acts and omissions affecting all Plaintiffs constitute a violation of the Fair Labor Standards Act and as such Defendants are jointly and severally liable for unpaid minimum wages, unpaid overtime at the regular rate of pay, and the liquidated damages penalty of 100 percent of unpaid minimum wages and overtime under 29 U.S.C. § 216(b).

D.      Defendants are jointly and severally liable to all Plaintiffs, for breach of the express contracts between Plaintiffs and the Defendants, for the amount of wages that were not paid in return for their services to the Defendants and for materials purchased and not repaid by the Defendants.

E.      Under C.R.S. § 8-4-109(3), Defendants are jointly and severally liable to all Plaintiffs for unpaid wages, consisting of unpaid regular pay and unpaid overtime, and the penalty of ten days regular wages.

i.      For Plaintiffs Moreno, Comparan, and Zamora, ten days of wages, at an average of 8 hours work per day, at the rate of $11 per hour, equals a penalty of $880.00.

ii.      For Plaintiff Luna, ten days of wages, at an average of 8 hours work per day, at the rate of $8 per hour, equals a penalty of $640.00.

F.      Defendants' acts and omissions effecting all Plaintiffs constitute fraud, and willful and wanton conduct under C.R.S. § 13-21-102.  Further, Defendants consciously conspired and deliberately pursued a common plan or design to commit a tortuous act as specified under C.R.S. § 13-21-111.5.

G.      As a result, Defendants are jointly and severally liable to all Plaintiffs for

fraud damages consisting of the wages and materials they owed Plaintiffs but failed to pay, and exemplary damages equal to three times Plaintiffs' actual damages.

H.     Defendants are jointly and severally liable to all Plaintiffs for prejudgment interest pursuant to C.R.S. § 5-12-102(10)(a) and for post-judgment interest pursuant to 28 U.S.C. § 1961(b) in the following amounts:

i.     To Moreno for $152.96 prejudgment interest, from Moreno's final date of employment on July 4, 2005 until the date of filing for the Motion for Default on October 25, 2006, based on 8% per annum on $1439.00. Per diem interest on the $1439.00 accrues after October 25, 2006 at a rate of $0.32 / day until the date of judgment. Post-judgment interest pursuant to 28 U.S.C. § 1961(b) will accrue from the date of this Order until Moreno has been fully paid.

ii.    To Comparan for $141.00 prejudgment interest, from Comparan's final date of employment on July 12, 2005 until the date of filing for the Motion for Default on October 25, 2006, based on 8% per annum on $1369.75. Per diem interest on the $1369.75 accrues after October 25, 2006 at a rate of $0.30 / day until the date of judgment. Post-judgment interest pursuant to 28 U.S.C. § 1961(b) will accrue from the date of this Order until Comparan has been fully paid.

iii.   To Zamora for $94.00 prejudgment interest, from Zamora's final date of employment on July 12, 2005 until the date of filing for the Motion for Default on October 25, 2006, based on 8% per annum on $891.25. Per diem interest on the $891.25 accrues after October 25, 2006 at a rate of $0.20 / day until the date of judgment. Post-judgment interest pursuant to 28 U.S.C. § 1961(b) will accrue from the

date of this Order until Zamora has been fully paid.

          iv.    To Luna for $52.47 prejudgment interest, from Luna's final date of employment on July 5, 2005 until the date of filing for the Motion for Default on October 25, 2006, based on 8% per annum on $505.00.  Per diem interest on the $505.00 accrues after October 25, 2006 at a rate of $0.11 / day until the date of judgment. Defendants are jointly and severally liable to Luna for post-judgment interest under 28 U.S.C.A. § 1961(b).  Post-judgment interest pursuant to 28 U.S.C. § 1961(b) will accrue from the date of this Order until Luna has been fully paid.

## III. CONCLUSION

          In conclusion, I find that Plaintiffs are entitled to a default judgment in their favor for actual damages four unpaid wages and materials purchased; statutory penalties under the CWCA; exemplary damages; prejudgment and post-judgment interest; and reasonable attorneys' fees and costs.  In order to avoid duplication, I will not award additional amounts for unpaid minimum wages and liquidated damages under the FLSA.  Therefore, based on the foregoing, it is hereby

          ORDERED that Plaintiffs' Motion for Entry of Default Judgment, filed October 25, 2006 (docket #35) is **GRANTED**, and in accordance therewith I find that Defendants are jointly and severally liable to the Plaintiffs in the following amounts:

          i.    As of the date of this Order, the Defendants are liable to **Plaintiff Rolando Moreno** for: (1) $1389.00 in unpaid actual wages; (2) $50.00 for unpaid materials purchased by Moreno for the benefit of the Defendants; (3) $880.00 in CWCA penalties; (4) $4317.00 in exemplary damages; and (5) prejudgment interest of $166.40

for a total of **$6,802.40 plus post-judgment interest at the statutory rate**.

      ii.     As of the date of this Order, the Defendants are liable to **Plaintiff Tomas Comparan** for: (1) $1369.75 in unpaid actual wages; (2) $880.00 in CWCA penalties; (3) $4109.25 in exemplary damages; and (4) prejudgment interest of $153.60 for a total of **$6,512.60 plus post-judgment interest at the statutory rate**.

      iii.     As of the Date of this Order, the Defendants are liable to **Plaintiff Francisco Zamora** for: (1) $891.25 in unpaid actual wages; (2) $880.00 in CWCA penalties; (3) $2673.75 in exemplary damages, for a total of $3565.00; and (4) prejudgment interest of $102.40 for a total of **$4,547.40 plus post-judgment interest at the statutory rate**.

      iv.     As of the date of this Order, the Defendants are liable to **Plaintiff Norma Luna** for: (1) $376.00 in unpaid actual wages; (2) $129.00 for material purchased by Luna for the benefit of the Defendants; (3) $640.00 in CWCA penalties; (4) $1515.00 in exemplary damages; and (5) prejudgment interest of $57.08 for a total of **$2,171.08 plus post-judgment interest at the statutory rate**. It is

      FURTHER ORDERED that Plaintiffs' Motion for Attorney Fees and Costs Pursuant to 29 U.S.C. § 216 and Colo. Rev. Stat. § 8-4-110(1) (docket #42) is **GRANTED**. In accordance therewith, I find that Defendants are jointly and severally liable to Plaintiffs for reasonable attorneys' fees in the amount of **$38,829.25.** It is

      FURTHER ORDERED that Plaintiffs are entitled to costs pursuant to Fed. R. Civ. P. 54(d). Plaintiffs shall file a separate Bill of Costs pursuant to D.C.Colo.LCivR 54.1 within ten days after entry of this final order.

Dated:  December 7, 2006

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge